# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2111

_____

United States of America,      *
     *
         Appellant,      *
     *    Appeal from the United States
     v.      *    District Court for the
     *    Southern District of Iowa.
Kerwin Lamont Summage,      *
     *
         Appellee.      *

_____

Submitted: October 16, 2006
Filed: April 10, 2007

_____

Before WOLLMAN, RILEY, and GRUENDER, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

The government appeals from the district court's order granting the defendant's motion to suppress evidence seized during the search of his home. We reverse and remand.

## I.

In July 2004, an alleged victim (whom we shall refer to as Doe), along with his mother and sister, went to the police station in Davenport, Iowa, to report what they believed to be a crime involving Doe, an unidentified female, and Kerwin Summage, Doe's cousin. There, they spoke with Detective Brandon Noonan. The sister

explained to Noonan that Doe was a low-functioning, mentally retarded individual who worked at a handicap development center and feared Summage. Doe then recounted to Noonan an incident that had reportedly occurred sometime after his birthday. According to Doe, he and Summage were supposed to go can-collecting on the day of the incident. Instead, Summage took Doe to his apartment. There, Summage offered Doe compensation if he would have sex with a woman that was waiting naked in Summage's bedroom. The woman undressed Doe, had him lie down on the bed, and then performed oral sex on him while Summage videotaped and took photographs of the encounter.

After further investigation, Noonan learned that Summage had subsequently moved to a different residence. Noonan prepared an application for a warrant to search Summage's new residence and submitted it to an Iowa district court judge. Included in the application was an affidavit, prepared and sworn to by Noonan, which stated:

> Kerwin Summage, the renter of the apartment at 1825 W 40th St # 7 did make video recordings of a mentally handicapped male having sex with a female. Summage offered the victim money to have sex with this unknown female. Summage picked up the victim at his residence. He then took the victim to the residence he was staying at on 13th St, at the time of the incident. Summage did this with the intent to have the victim have a sexual encounter with a female so he could video tape it. Since the incident has happened Summage has been kicked out of the residence he was staying at on 13th St and is currently living at the address on W 40th St. Detectives were able to confirm that Kerwin is renting this apartment through the utility company and relitives (sic)[.]
>
> When Kerwin and the victim arrived at his apartment, he offered the victim who has a mental handicap money to have sex with a female. The female was in his bedroom, naked, waiting for Kerwin and the victim to arrive. The female then undressed the victim and performed oral sex upon the victim as Summage video taped the encounter. The victim also

-2-

reports that Summage has taken photographs of the (sic) him. It is believed that Summage is currently in possession of these items.

After asking Noonan for Doe's age, the district judge wrote on the affidavit, "The alleged victim is in his mid to late 20's." The district judge then approved the application and issued a search warrant for Summage's residence. The warrant listed the following as items to be seized:

> 1. Indicia of occupancy, residency, rental and/or ownership of the premises described herein, including, but not limited to, utility and telephone bills, canceled envelopes, rental, purchase or lease agreements, and keys.
> 2. All video tapes and DVD's (sic)
> 3. pronographic (sic) pictures
> 4. All video and/or digital recording devices and equipment
> 5. All equipment that is used to develope (sic) and/or upload/download photographs and/or movies
> 6. computer(s)

Noonan executed the warrant the following day. During the search of Summage's residence, the police found and seized at least two recordings containing child pornography. Summage was subsequently indicted for the offenses of producing child pornography and possessing child pornography.

Summage moved to suppress the evidence found during the search of his home, arguing that the affidavit failed to establish probable cause, that the warrant lacked particularity, and that the good faith exception to the exclusionary rule did not apply. The district court granted the motion, concluding that the affidavit did not establish probable cause because it consisted of conclusory statements, failed to adequately state a crime, contained no time frame for the alleged criminal activity, and failed to show the requisite nexus between the alleged criminal activity and the place to be

searched. Further, the court found that the warrant lacked sufficient particularity and concluded that the good faith exception to the exclusionary rule did not apply.

## II.

"When reviewing a district court's grant of a motion to suppress, we review its factual findings for clear error and its application of law *de novo*." United States v. Andrews, 454 F.3d 919, 921 (8th Cir. 2006).

### A. Probable Cause

To be valid under the Fourth Amendment, a search warrant must be supported by a showing of probable cause. United States v. Underwood, 364 F.3d 956, 963 (8th Cir. 2004). "Probable cause exists, if under the totality of the circumstances, a showing of facts can be made 'sufficient to create a fair probability that evidence of a crime will be found in the place to be searched.'" Id. (quoting United States v. Gabrio, 295 F.3d 880, 883 (8th Cir. 2002)).

As noted by the district court, the affidavit is conclusory in nature. The only indication of a source for any of the information appears towards the end of the affidavit, where Noonan states "The victim also reports that Summage had taken photographs of . . . him."

Conclusory statements made by affiants fail to give the issuing magistrate a substantial basis for determining that probable cause exists. United States v. Caswell, 436 F.3d 894, 897-98 (8th Cir. 2006). It is the magistrate, and not the affiant, that is responsible for making this determination. Illinois v. Gates, 462 U.S. 213, 239 (1983). "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." Id. The question, then, is whether Noonan's statement

"The victim also reports that Summage had taken photographs of . . . him" lends itself to a fair inference that the victim was also the source of the earlier set-forth account of what had occurred on the day in question. We conclude that it does, for any other reading would render the words "also reports" superfluous.

The district court also found the affidavit deficient in its failure to set forth the date of the alleged incident.[1] The date of the occurrence of the facts relied upon in an affidavit is of importance in the determination of probable cause because untimely information may be deemed stale. See, e.g., United States v. Gettel, 474 F.3d 1081, 1086 (8th Cir. 2007); United States v. LaMorie, 100 F.3d 547, 554 (8th Cir. 1996) ("Probable cause must exist when a warrant is issued, not merely at some earlier time."). "There is no bright-line test for determining when information is stale. . . . Time factors must be examined in the context of a specific case and the nature of the crime under investigation." United States v. Koelling, 992 F.2d 817, 822 (8th Cir. 1993). Here, as was true in Koelling, we conclude that it could be presumed that Summage would maintain in his possession the video and photographs that he made of the sexual encounter between Doe and the waiting woman. Thus, the affidavit's failure to include the date of that encounter is not fatal to a determination that probable cause existed for a search of Summage's new residence.

We turn next to the question of the nexus between the evidence to be searched for and the place to be searched. See United States v. Tellez, 217 F.3d 547, 550 (8th Cir. 2000) ("[T]here must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue . . . ."). For the same reason set forth above regarding the timeliness of the information, we conclude that the district court erred in finding the lack of such nexus. Judges "may draw reasonable inferences from the totality of the circumstances in determining whether probable

---

[1]While the issuing judge apparently asked Noonan about the timing of the events contained in the affidavit, Noonan's answers are not documented within the affidavit.

cause exists to issue a warrant . . . ." United States v. Thompson, 210 F.3d 855, 860 (8th Cir. 2000). Given the circumstances here, we think it would be reasonable to infer that Summage would have the video and photographs at his new residence.

The district court faulted the affidavit for its lack of specificity in describing the offense giving rise to the request for the warrant. We disagree. It is not necessary for an affidavit to include the name of the specific crime alleged. United States v. Koyomejian, 970 F.2d 536, 548 (9th Cir. 1992) (Kozinski, J., concurring); 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 3.1, at 9 n.28 (4th ed. 2004) ("It need not be certain precisely what crime was committed."). Rather, "'only a *probability* of criminal conduct need be shown.'" United States v. Koonce, 485 F.2d 374, 380 (8th Cir. 1973) (quoting McCreary v. Sigler, 406 F.2d 1264, 1268 (8th Cir. 1969)); Gates, 462 U.S. at 235 ("[I]t is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'" (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969))). Although the affidavit did not specifically name the crime that had been committed, the alleged facts support a finding of probable cause to believe that Summage's actions constituted criminal conduct – specifically the solicitation of prostitution[2] or pandering[3] – given the fact that Summage had offered money in exchange for Doe's services in a sex act.

_____

[2]Iowa's solicitation statute, in relevant part, provides: "Any person who commands, entreats, or otherwise attempts to persuade another to commit a particular felony or aggravated misdemeanor . . . solicits such other to commit that felony or aggravated misdemeanor." IOWA CODE § 705.1 (2003). Iowa's prostitution statute provides: "A person who sells or offers for sale the person's services as a partner in a sex act, or who purchases or offers to purchase such services, commits an aggravated misdemeanor." IOWA CODE § 725.1 (2003).

[3]Iowa's pandering statute, in relevant part, provides: "A person who persuades, arranges, coerces, or otherwise causes another, not a minor, to become a prostitute . . . or keeps or maintains any premises for the purposes of prostitution . . . commits a class 'D' felony." IOWA CODE § 725.3(1) (2003).

## B. Particularity

We turn, then, to the district court's finding that the warrant was over-broad and lacking in particularity.

"To satisfy the particularity requirement of the fourth amendment, the warrant must be sufficiently definite to enable the searching officers to identify the property authorized to be seized." United States v. Horn, 187 F.3d 781, 788 (8th Cir. 1999). "The degree of specificity required will depend on the circumstances of the case and on the type of items involved." Id. The particularity requirement "is a standard of 'practical accuracy' rather than a hypertechnical one." United States v. Peters, 92 F.3d 768, 769-70 (8th Cir. 1996).

As set forth above, the warrant authorized the search and seizure of all video tapes and DVDs, pornographic pictures, video and digital recording devices and equipment, all equipment that is used to develop, upload, or download photographs and movies, computers, and any indicia of occupancy. At the time the warrant was applied for, the officers knew only that a video and photographs of the alleged incident supposedly existed, not the particular format in which these items were being kept.

The requirement of particularity must be assessed in terms of practicality. As a practical matter, it is frequently difficult, and often times more intrusive to an individual's privacy, to perform an on-site review of certain items. United States v. Hill, 459 F.3d 966, 974-75 (9th Cir. 2006) (recognizing that an on-site search of a computer "could take many hours and perhaps days" and "would not only impose a significant and unjustified burden on police resources, it would also make the search more intrusive"); United States v. Upham, 168 F.3d 532, 535 (1st Cir. 1999) ("As a practical matter, the seizure and subsequent off-premises search of the computer and

all available disks was about the narrowest definable search and seizure reasonably likely to obtain the images."); <u>Horn</u>, 187 F.3d at 788 (concluding that the officers could not practically view all the videos at the search site).  An off-site analysis of the relevant materials is therefore often necessary.

Because no indication was given regarding the nature of the format in which the sought-for video and photographs were created or stored, it was necessary to search a broad array of items for the relevant materials, the on-site search of which could take a significant amount of time.  Given these circumstances and the practical concerns associated therewith, we conclude that the warrant was neither over-broad nor lacking in particularity.

In light of our holding that the warrant established probable cause and was not lacking in specificity or particularity, we need not address the government's alternative argument that the good faith exception established in <u>United States v. Leon</u>, 468 U.S. 897 (1984), validated the search.

## Conclusion

The order suppressing the evidence is reversed, and the case is remanded to the district court for further proceedings.

_____