# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1957

_____

United States of America

*Plaintiff – Appellee*

v.

A.C. Jackson

*Defendant – Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted: March 13, 2015
Filed: May 5, 2015

_____

Before MURPHY and SHEPHERD, Circuit Judges, and HARPOOL,[1] District Judge.

_____

HARPOOL, District Judge.

A.C. Jackson was convicted on two counts of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Jackson now appeals the district

_____

[1]The Honorable Douglas Harpool, United States District Judge for the Western District of Missouri, sitting by designation.

court's[2] denial of his motion to suppress. Specifically, Jackson argues the district court erred in finding that while the application for the search warrant failed to supply probable cause for its issuance, the *Leon* good faith exception to the exclusionary rule allowed the admission of evidence. We affirm.

I.

On March 28, 2013, a Wayne County, Missouri deputy received a call from a dispatcher that a man wanted to report that his firearm had been stolen. When the deputy arrived at the home of Bob Elledge he discovered the man reporting the stolen firearm was the Defendant, A.C. Jackson. A Missouri Highway Patrol Trooper arrived shortly thereafter to assist.

Defendant informed the deputy that he had purchased a .22 caliber rifle from Elledge for $200 and that Defendant's nephew, Bobby Joe Jackson, had stolen the rifle. When the deputy stepped outside to speak with the trooper, she informed him Defendant was a previously convicted felon with numerous armed criminal actions on his criminal history report.

The officers proceeded to contact the nephew, Bobby Joe Jackson. The nephew informed the officers he was involved in a dispute with Defendant and feared for his life. He stated Defendant had threatened to shoot him. Bobby Joe Jackson stated he had told Elledge this story and asked if he could take the gun to feel safer and keep the gun away from Defendant. Elledge had agreed to give the

---

[2]The Honorable Stephen N. Limbaugh, Jr., United States District Court Judge for the Eastern District of Missouri, adopting, in part, the report and recommendation of the Honorable Lewis M. Blanton, United States Magistrate Judge for the Eastern District of Missouri.

gun to the nephew.  In addition, Defendant's nephew informed the officers there was another gun, a multi-barreled firearm, located in Defendant's home.

After questioning the nephew, the officers again questioned Defendant. Defendant denied having any firearms in his home.  He stated he had purchased the .22 caliber rifle as an investment, and since it was not in his home he did not think he had broken any rules.  The deputy asked to search Defendant's home but he declined stating the deputy would have to get a warrant.  The officers then arrested Defendant and took pictures of his home to use in the application of a search warrant.

The deputy then prepared an affidavit for the application of a search warrant. The affidavit contained the following sworn statement of probable cause for the search:

> I am a member of Wayne County Sheriff's Department.  I am a certified Peace Officer in the State of Missouri and have been since 2011.  I have training in investigations and have been involved in investigations that have led to favorable conclusions.
>
> On Thursday, March 28, 2013, this officer received information of a possible stolen firearm from AC Jackson.  Upon investigating said report this Officer found the report to be false.  This Officer received information that AC Jackson was to be [sic] a convicted felon and to be in possession of other firearms at his residence on Hurley DR, Wappapello, Missouri.  This Officer request Jackson to check his residence for firearms wherein he refused.  This Officer has reason to believe there are more firearms at Jackson's residence. This Officer has a statement confirming presence of firearms and ammunition at this trailer.

The prosecuting attorney reviewed the application and approved it.  The deputy then presented the search warrant affidavit and application to Wayne County, Missouri, Circuit Judge Randy Shuller.  Judge Shuller asked the deputy

some questions about the case and the basis for the warrant and then signed the warrant.

When the officers executed the warrant they discovered a Rossi multi-barreled firearm and ammunition in the Defendant's home. Defendant later admitted he had purchased the .22 caliber rifle that he had previously reported stolen, but denied the Rossi multi-barreled firearm found in his home was his. Defendant claimed the Rossi firearm belonged to his nephew.

Defendant was indicted for being a felon in possession of a firearm based on the .22 caliber rifle he reported stolen and the Rossi multi-barrel firearm found in his home. Defendant filed a motion to suppress the Rossi multi-barreled firearm, arguing any evidence obtained during the course of the execution of the search warrant should be excluded on the grounds that the warrant was issued in violation of the Fourth Amendment of the Constitution of the United States because it lacked probable cause or a reasonable basis for authorizing the search.

After conducting a hearing on the motion to suppress, the magistrate judge issued his report and recommendation. The magistrate's report and recommendation stated, "considering all the circumstances of Deputy Hanger's interaction with Judge Shuller, including the oral interchange," Judge Shuller had a susbstantial basis for concluding probable cause existed. The magistrate further stated that if his report and recommendation on probable cause was found to be incorrect by the district court, then the good faith exception should be applied.

The district court ultimately denied the motion to suppress, adopting in part, the magistrate judge's report and recommendation. In doing so, the district court stated it did not find "Judge Shuller had a substantial basis for … concluding that probable cause existed [for issuance of the search warrant]," but instead held that the "good faith" exception under *Leon* applied to the search.

-4-

The jury returned a verdict of guilty on both counts and Defendant was sentenced to 210 months on each of the counts, to run concurrently. Defendant now appeals the denial of his motion to suppress.

## II.

Defendant argues the warrant in this case was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence unreasonable" and therefore that the officers unlawfully obtained the Rossi firearm from his home. Citing United States v. Leon, 468 U.S. 897, 104 S. Ct. 3405, 3421, 82 L. Ed. 2d 677 (1984). Defendant further contends the district court erred in applying the good faith exception to allow for the introduction of the evidence found by the officers executing the warrant.

"On appeal from the denial of a motion to suppress, we review a district court's findings of fact for clear error and its determination of probable cause and the application of the *Leon* exception de novo." United States v. Houston, 665 F.3d 991, 994 (8th Cir. 2012), citing United States v. Perry, 531 F.3d 662, 665 (8th Cir. 2008).

"The Fourth Amendment commands that no warrants shall issue, but upon probable cause, supported by Oath or affirmation." United States v. Fiorito, 640 F.3d 338, 345 (8th Cir. 2011). "The ordinary sanction for police violation of Fourth Amendment limitations has long been suppression of the evidentiary fruits of the transgression." Id. Yet, this exclusionary rule does not apply "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." United States v. Leon, 468 U.S. at 921, 104 S.Ct. 3405. A court may consider whether the good-faith exception applies before conducting a probable cause analysis. United States v. Proell, 485 F.3d 427, 430 (8th Cir. 2007).

Under the good-faith exception, evidence seized pursuant to a search warrant later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable. Id. The court must look at the objectively ascertainable question of whether a reasonably well trained officer would have known that the search was illegal despite a judge's issuance of the warrant. Id., citing United States v. Puckett, 466 F.3d 626, 630 (8th Cir. 2006).

There are four situations when the good-faith exception would not apply:

(1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge;
(2) when the issuing judge "wholly abandoned his judicial role" in issuing the warrant;
(3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and
(4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid.

Id. at 431, citing Leon, 468 U.S. at 923, 104 S.Ct. 3405.

In assessing the objective reasonableness of a police officer's execution of a warrant, we must look to the totality of the circumstances, including any information known to the officer but not presented to the issuing judge. Id. at 995.

In this instance, the deputy preparing the affidavit for the search warrant application had interviewed the Defendant, the Defendant's nephew and a neighbor. He had also viewed the location where the alleged firearm was located. The deputy had knowledge that Defendant was a convicted felon. The deputy prepared his affidavit based on the first hand information he obtained from interviewing the three individuals and his knowledge that the interviews corroborated the allegations regarding the firearms. Further, the deputy had the

affidavit reviewed and approved by the prosecutor before submitting it to the court. The Judge then signed the warrant after the deputy answered the judge's additional questions about the search warrant application.

We find the actions of the deputy in executing the search warrant were taken in objectively reasonable good faith considering the deputy's knowledge and actions, the review and approval of the warrant application by the prosecutor, and the issuance of the warrant by Judge Shuller after the deputy responded to his specific questions.

Defendant further argues the good faith exception should not apply because the affidavit contained false information. Defendant contends the deputy's statement "…this officer received information of a possible stolen firearm from AC Jackson. Upon investigating said report this Officer found the report to be false," constitutes false information or a statement made with reckless disregard for the truth.

Again, the deputy prepared his affidavit based on the information he received from his interviews of the Defendant, Defendant's nephew and Elledge. Considering the information he gained from those interviews, it is reasonable to conclude the deputy believed Defendant's nephew had asked Elledge to give him the firearm in order to protect himself. Further, based on the information available to the Deputy, it was reasonable for him to believe the firearm was not stolen, but was rather given to the nephew to protect himself from being shot and that the nephew did not intend to take permanent possession of the firearm.

We further find no evidence Judge Shuller wholly abandoned his judicial role in the issuance of the warrant. In fact, Judge Shuller made inquiry beyond the affidavit, discussing the case with the deputy, before issuing the warrant.

Because we find that the good faith exception under *Leon* applies, it is unnecessary to address whether the initial warrant contained sufficient probable cause.

## III.

Accordingly, we affirm the district court's denial of Defendant's motion to suppress.

_____